## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 1-800 CONTACTS, INC., a Delaware corporation, | Court File No.: 09-cv-1619 (JRT/AJB) |
| Plaintiff, | **COMPLAINT** |
| v. | **(JURY TRIAL DEMANDED)** |
| DAVID J. EILERS, an individual, and TWIN CITIES EYE SPECIALISTS, L.L.C., a Minnesota limited liability company, | |
| Defendants. | |

Plaintiff 1-800 Contacts, Inc. ("Plaintiff"), by and through counsel, hereby complains as follows:

### INTRODUCTION

1.     This case is about an ophthalmologist, Defendant David Eilers ("Eilers"), who individually and through his business Defendant Twin Cities Eye Specialists, L.L.C., ("Twin Cities"), has intentionally and willfully sought to impede his competitor, Plaintiff 1-800-Contacts, by violating state and federal statutes, engaging in intentional interference with Plaintiff's prospective business relations, and purposefully committing business defamation.   While Defendants Eilers and Twin Cities (collectively "Defendants") explain that they have performed such actions because they do not happen to like the way that Plaintiff verifies its customers' contact lens prescriptions, their explanation gives Defendants no excuse to violate the law.   As such, in this lawsuit,

Plaintiff seeks, among other relief, general, specific and punitive damages to compensate it for the harm Defendants have caused, an injunction to prohibit Defendants from continuing their improper conduct, and attorneys' fees.

## PARTIES

2.     Plaintiff 1-800 Contacts, Inc. is a Delaware corporation having its principal place of business in Draper, Utah.

3.     Defendant David J. Eilers is a medical doctor specializing in ophthalmology.  Eilers conducts his practice and business in St. Paul, Minnesota.

4.     Defendant Twin Cities Eye Specialists, L.L.C. is a limited liability company organized under the laws of the State of Minnesota.  Twin Cities conducts business in St. Paul, Minnesota.

5.     Based on information and belief, Twin Cities' exclusive business is associated with Eilers' practice of ophthalmology and the sale of eye glasses and contact lenses related to such ophthalmologic practice.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiff's claims made pursuant to the Lanham Act, 15 U.S.C. § 1125, pursuant to 28 U.S.C. § 1331.  In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

7.     This Court has personal jurisdiction over Defendants because Defendants have transacted business in Minnesota and, as alleged herein, Defendants' acts complained of herein all occurred in the State of Minnesota.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

9.     Plaintiff is engaged in the business of selling and distributing contact lenses and eye care products.  Plaintiff sells its products through various channels including telephone, facsimile, the Internet and mail orders.  Plaintiff markets and sells contact lenses throughout the United States, including the State of Minnesota.

10.     Defendants are competitors of Plaintiff.  Specifically, in addition to providing ophthalmologic services and treatment to patients, Defendants are also in the business of selling contact lenses to consumers.

11.     In 2003, Congress enacted the Fairness to Contact Lens Consumers Act, 15 U.S.C. § 7601, *et seq.* (the "FCLCA").  Pursuant to the FCLCA, sellers of contact lenses may sell contact lenses to consumers only in accordance with a contact lens prescription issued to the consumer.  In order to comply with the prescription requirement, a consumer must either provide the seller of contact lenses with a copy of his or her prescription or the seller must verify the prescription directly with the prescriber, e.g., an optometrist or ophthalmologist.

12.   In accordance with the FCLCA, 1-800 directly calls a consumer's optometrist or ophthalmologist to verify a consumer's prescription for contact lenses. Specifically, a 1-800 employee calls the optometrist or ophthalmologist personally and, when someone at the office of the optometrist or ophthalmologist answers, the employee places the call to an automated recording, which provides information about the consumer and the prescription as required by the FCLCA.  The automated recording provides the optometrist or ophthalmologist with the patient's full name and address, information about the prescribed contact lens, the quantity of contact lenses ordered, the date of the patient's request, the date and time of the verification request and the name of a contact person at the seller's company, including telephone and facsimile numbers.

13.   In the event that the line is disconnected, another recorded call will be made to the optometrist or ophthalmologist in order to ensure that the entire verification information is provided to the optometrist or ophthalmologist.  This process will continue until the entire verification information is provided to the optometrist or ophthalmologist.

14.   Under the FCLCA, the optometrist and/or ophthalmologist who issued the prescription is then obliged to either confirm the accuracy of the prescription for the contact lenses affirmatively by responding directly to the seller or to specifically advise the seller of the nature of the inaccuracy or invalidity of the prescription.  This is called "Active Verification."   Alternatively, under the FCLCA, the optometrist and/or ophthalmologist may withhold any response to the seller—thereby allowing the seller to

4

deem the prescription information included on the request as valid. This is called "Passive Verification."

15. In or around January 2010, Eilers began an intentional and improper attempt to disrupt Plaintiff's business, including, but not limited to, the following actions.

16. Plaintiff began making numerous calls to Plaintiff's general customer service line, i.e., 1-800 Contacts (1-800-266-8228), which is the phone line for customers to order contact lenses from Plaintiff (hereinafter the "Sales Line"). In these calls, Eilers was very aggressive and rude to Plaintiff's employees. During some of his initial phone calls, Eilers complained that Plaintiff's prescription verification procedures—the recorded calls—were a waste of his time. He asked that the customer service representative change Plaintiff's verification procedures. In these phone calls, Eilers admitted that he was directing his customers to purchase contact lenses from anyone other than Plaintiff.

17. When Eilers' complaints about Plaintiff's prescription verification procedures were not addressed to his satisfaction, Eilers continued calling the Sales Line, this time repeatedly falsely identifying himself.

18. For instance, on one occasion, he falsely identified himself as being associated with the Attorney General's office of the State of Minnesota and suggested that action was to be taken concerning Plaintiff's prescription verification procedures.

19.     Eilers also made at least one call in which he falsely identified himself as a television news reporter and asked for a comment from the customer service representative, which he claimed would be played as part of a television news story.

20.     In addition, Eilers falsely identified himself as the husband of one customer and then disclosed medical information about the customer in order to obtain information about the customer's order from Plaintiff.

21.     In addition, Eilers made numerous calls to the Sales Line pretending to be a customer; he would then put the customer service representative "on hold" until the customer service representative hung-up the phone.

22.     Moreover, based on information and belief, Defendants told his patients not to purchase contact lenses from 1-800.

23.     Based on information and belief, Defendants also falsely told customers that Plaintiff does not verify the prescriptions of its customers.

24.     At least one customer of Plaintiff cancelled her order to purchase contact lenses from Plaintiff after Eilers spoke with the customer.  Based on information and belief, Eilers falsely told the customer that Plaintiff does not verify prescriptions for contact lenses.

25.     Moreover, in response to Plaintiff's requests for verification of prescriptions, Defendants began faxing to Plaintiff a standard response as follows:

> We are unable to confirm the prescription for [patient, patient reference number].

6

Not a valid prescription.  This prescription is invalid and may not be filled.

The patient has been encouraged to purchase her contacts from any vendor that facilitates direct verification of contact lens prescriptions.

The only vendor that we are aware of that does not is 1-800-Contacts.   We have made repeated attempts to verify prescriptions with 1-800-Contacts, and 1-800-Contacts does not answer calls from prescribers in order to facilitate this. We have informed the patient that we are immediately transferred to a voicemail that has a poor history of receiving any response.  We have informed the patient that we have made repeated calls to 1-800-Contacts, and we have been informed that how 1-800-Contacts conducts its business practice is "not any of our business."

It is our practice's policy to verify contact lens prescriptions in a manner that facilitates effective verification and efficient verification.  Our policy states that we will verify contact lens prescriptions with a response to a fax-request submitted to use [sic] or with a two-way discussion with human representative. Robotic calls with no direct line to call to confirm or correct a prescription do not facilitate this.

We have made repeated requests to have 1-800-Contacts comply with these reasonable requests.  We have been unable to have anyone at 1-800-Contacts help facilitate this.   We would welcome such a change in response from 1-800-Contacts.  We are happy to verify contact lens prescriptions with any company that does facilitate verification and correction, and welcome 1-800-Contacts to do so as well so that together we can ensure quality patient care.  To date, every other seller of contact lenses that we have had interaction with has readily done this.

26.    In addition, based on information and belief, Eilers described Plaintiff's customers' valid prescriptions as being "invalid" so that Plaintiff would be unable to fulfill the customers' orders pursuant to the FCLCA.

27.    Defendants' responses to Plaintiff's prescription verification requests were unlawful.  Specifically, Defendants were obliged to specify the basis for any inaccuracy or invalidity of the prescription, which Defendants failed to do.

28.    On September 2, 2010, a patient visited Defendants' offices for a contact lens prescription.  When the patient informed Defendants that she intended to purchase contact lenses from Plaintiff, Eilers, on behalf of himself and Twin Cities, described Plaintiff as being awful.  Eilers further told his patient that Plaintiff had an awful business and that Plaintiff did not verify contact lens prescriptions for its customers.

## FIRST CLAIM FOR RELIEF
### (Violation of the Lanham Act – 15 U.S.C. § 1125)

29.    By this reference, Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth in full herein.

30.    Defendants, in connection with the promotion of their sale of contact lenses to customers, advised their customers that Plaintiff does not verify the contact lens prescriptions of its customers.

31.    Defendants' statements about Plaintiff's prescription verification methods were false and/or misleading descriptions of fact and/or misleading representations of fact.   Defendants' descriptions about Plaintiff's prescription verification methods

misrepresented the nature, characteristics and quality of Plaintiff's goods, services and/or commercial activities.

32.     Plaintiff has been damaged by Defendants' misconduct.

33.     Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants (1) their profits on account of misrepresenting Plaintiff's prescription verification methods, (2)  damages sustained by Plaintiff as a result of Defendants' misrepresentation of Plaintiff's prescription verification methods, and (3) costs of suit incurred herein.

34.     This is an exceptional case.  As such, Plaintiff is entitled to an award of reasonable attorneys' fees incurred herein.

## SECOND CLAIM FOR RELIEF
### (Uniform Deceptive Trade Practices Act – Minn. Stat. § 325D.44)

35.     By this reference, Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth in full herein.

36.     Defendants, in the course of their business and occupation, have caused a likelihood of misunderstanding as to the approval and certification of contact lenses purchased from Plaintiff.

37.     Defendants, in the course of their business and occupation, have disparaged the goods, services and/or business of Plaintiff by false or misleading misrepresentations of fact.  For instance, as set forth above, Defendants have falsely stated that Plaintiff does not verify the contact lens prescriptions of its customers.

38.     Plaintiff is entitled to an injunction precluding Defendants from representing to potential customers of Plaintiff, including Defendants' patients and customers, that Plaintiff does not verify the contact lens prescriptions of its customers.

39.     Because Defendants have willfully engaged in their deceptive trade practice knowing them to be deceptive, Plaintiff is entitled to recover from Defendants its attorneys' fees incurred herein.

## THIRD CLAIM FOR RELIEF
### (Intentional Interference with Prospective Contractual Relations)

40.     By this reference, Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth in full herein.

41.     Plaintiff had a reasonable expectation of economic advantage through the sale of contact lenses to Defendants' patients and customers.

42.     Defendants knew about Plaintiff's reasonable expectation of economic advantage.

43.     Defendants intentionally and improperly interfered with Plaintiff's prospective contractual relations with patients and customers of Defendants.

44.     Defendants actions include inducing or otherwise causing Defendants' patients and customers not to enter into or to discontinue prospective relations with Plaintiff. Defendants have made false and misleading statements to Defendants' patients and customers about Plaintiff's prescription verification procedures and the quality of Plaintiff's business.

45.     Such false and misleading statements have caused Defendants' patients and customers to avoid doing business with Plaintiff and/or to discontinue customer orders with Plaintiff.

46.     Defendants also have intentionally and improperly interfered with Plaintiff's prospective contractual relations with Defendants' patients and customers by preventing, by improper means, Plaintiff from fulfilling customer orders placed by Defendants' patients and customers.  Specifically, Defendants have denied the validity of prescriptions for contact lenses issued to Defendants' patients and customers without proper basis.  By refusing to verify said prescriptions, Plaintiffs have been unable under the FCLCA to fulfill those customer orders.

47.     In the absence of such conduct, it is reasonably probable that Plaintiff would have done business with Defendants' patients and customers.

48.     Plaintiff has been injured by Defendants' misconduct.   Specifically, Plaintiff has experienced lost profits and lost sales from Defendants' intentional interference with Plaintiff's prospective economic relations with said customers.

49.     Defendants' actions demonstrate a deliberate disregard for the rights of Plaintiff.  Plaintiff is entitled to recover punitive damages from Defendants.

## FOURTH CLAIM FOR RELIEF
### (Business Defamation)

50.     By this reference, Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth in full herein.

11

51.     Defendants' statements to their patients and customers that Plaintiff does not verify the contact lens prescriptions of its customers constitute false and defamatory statements of fact regarding the Plaintiff.

52.      Defendants made those statements to harm Plaintiff's reputation and lower Plaintiff in the estimation of the community.

53.     Defendants' statements did injure the business of Plaintiff including, but not limited to, causing lost sales and harm to the Plaintiff's reputation and standing in the community.

54.     Defendants' actions demonstrate a deliberate disregard for the rights of Plaintiff.

55.     Plaintiff is entitled to general damages and punitive damages from Defendants.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants as follows:

a.      Damages in an amount to be proven at trial including, but not limited to, general damages, specific damages, and punitive damages;

b.      Defendants' profits made on account of misrepresenting Plaintiff's prescription verification methods;

c.      An order enjoining Defendants from deceptive trade practices and

        from misrepresenting Plaintiff's prescription verification methods;

d.      Costs of suit incurred herein;

e.      Reasonable attorneys' fees incurred herein; and

f.      Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims triable by a jury.

Respectfully submitted,

**Dated:** November 2, 2010          **MASLON EDELMAN BORMAN & BRAND, LLP**


By: s/Michael C. McCarthy
        Michael C. McCarthy (#230406)
        Haley N. Schaffer (#0313099)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone:  612-672-8200
Facsimile:  612-672-8397
E-Mail:  mike.mccarthy@maslon.com
        haley.schaffer@maslon.com

*-and-*

Jefferson W. Gross (#8339)
*(Pro Hac Vice Pending)*
Aida Neimarlija (#12181)
BURBIDGE MITCHELL & GROSS
215 South State Street, Suite 920
Salt Lake City, Utah 84111
Telephone:  801-355-6677
Facsimile:  801-355-2341
E-Mail:  jwgross@bmgtrial.com
       aneimarlija@bmgtrial.com

***Attorneys for Plaintiff***